LAW OFFICE OF DAN M WINDER PC
DAN M. WINDER, ESQ.
Nevada Bar No. 001569
ARNOLD WEINSTOCK, ESQ.
Nevada Bar No. 000810
3507 W. Charleston Blvd.
Las Vegas, Nevada  89102
Tele: (702) 878-6000
Fax: (702) 474-0631
E-Mail: winderdanatty@aol.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JUDITH D. GUILLORY, individually, as the mother of MICHAEL JOHN GUILLORY and as the Administratrix of the ESTATE MICHAEL JOHN GUILLORY, Deceased,<br><br>              Plaintiffs,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, CLARK COUNTY, a political subdivision of the State of Nevada, CITY OF LAS VEGAS, a political subdivision of the State of Nevada, Z. CHRISTON (P#17276), Sgt. E. HUTCHASON (P#12955), Sgt. J. BONAGUIDI (P#7967), COMMUNITY AMBULANCE, EMTS DOES I – V, DOES VI - L, and ROES LI -LX,<br><br>              Defendants. | Case No.: _____<br><br><br><br><br><br>**COMPLAINT**<br>**§ 1983**<br>**(JURY TRIAL DEMANDED)** |

COMES NOW, Plaintiff, JUDITH GUILLORY, individually, as the mother of

MICHAEL GUILLORY and as the Administratrix of the ESTATE MICHAEL GUILLORY,

Deceased, by and through their attorney of record, DAN M. WINDER, ESQ., of the LAW

OFFICE OF DAN M WINDER P.C., hereby alleges, avers, and complains as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

1.      This is a civil rights action and wrongful death action arising under federal and state law for damages resulting from what Plaintiff alleges to be the wrongful death of MICHAEL JOHN GUILLORY ("the late Mr. Guillory") by the Defendant Las Vegas Metropolitan Police Department ("DEFENDANT LVMPD") and its officers (DEFENDANT OFFICERS).

**JURISDICTION AND VENUE**

2.      This action is authorized and instituted pursuant 42 U.S.C. § 1983. Jurisdiction is found upon federal question jurisdiction under 28 U.S.C. § 1331 as this case is a civil action arising under the Constitution and Laws of the United States, particularly the Fourteenth Amendment (due process) and the Eighth Amendment.

3.      PLAINTIFF JUDITH D. GUILLORY alleges, on personal knowledge and/or on information and belief, DEFENDANT LVMPD, under circumstances where they knew her adult son, MICHAEL JOHN GUILLORY ("the late Mr. Guillory"), an African-American, did not pose a threat to DEFENDANT OFFICERS or the public, DEFENDANT OFFICERS used an unreasonable amount of force in relation to the threat or force posed by the late Mr. Guillory, who had surrendered himself, was in custody, was incapacitated, and not resisting lawful arrest or threatening the life or safety of any DEFENDANT OFFICERS or the public.  As the late Mr. Guillory lay handcuffed, on the ground, under the hundreds of pounds of combined weight of DEFENDANT LVMPD officers, either by an LVMPD officer or by Community Ambulance personnel, independently or at the order and/direction of DEFENDANT LVMPD, injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine. Minutes after the injection, paramedics noticed that the late Mr. Guillory's Glasgow Coma Scale had dropped as low as a three (3). The extended, needless use of excessive force and torture by DEFENDANT LVMPD officers and the subsequent injection of a massive Ketamine overdose by Community Ambulance paramedics overwhelmed Mr. Guillory's body and he could not recover.

1   Consequently, MICHAEL JOHN GUILLORY, while in DEFENDANT LVMPD's custody, was

2   pronounced dead on December 6, 2021, at UMC, after several hours being intubated.

3        4.      Jurisdiction for the pendant state law claims is conferred by 28 U.S.C. § 1367

4   Supplemental Jurisdiction in that the pendant state claims arise out of the same case or

5   controversy under Article III of the United States Constitution which includes those claims that

6   involve the joinder or intervention of additional parties. PLAINTIFF JUDITH D. GUILLORY

7   brings her claims for loss of consortium, care comfort and society under this provision as well as

8   for such relief as she may have under § 1983.

9        5.      Venue is appropriate in the District of Nevada under 28 U.S.C. § 1391, as this is the

10  Federal District all defendants reside.

11       6.      The events complained of all occurred within the State of Nevada.

12                                      **PARTIES**

13       7.      At all times relevant to the instant Complaint, PLAINTIFF JUDITH D.

14  GUILLORY was a resident of Clark County, Nevada and the natural mother of MICHAEL

15  JOHN GUILLORY.

16       8.      PLAINTIFF JUDITH D. GUILLORY is the Administratrix of the Estate of Michael

17  John Guillory and in that capacity brings this suit on his behalf.

18       9.      At all times relevant to the instant Complaint, the late Mr. Guillory was a resident

19  of Clark County, Nevada.

20       10.     DEFENDANT LAS VEGAS METROPOLITAN POLICE DEPARTMENT is a

21  legal entity for the purposes of 42 U.S.C. § 1983. Defendant Las Vegas Metropolitan Police

22  Department (hereinafter "DEFENDANT LVMPD") is responsible for the enforcement of the law

23  and the protection of the citizenry of the City of Las Vegas and Clark County, Nevada.

24  DEFENDANT LVMPD is also responsible for the training, hiring, control and supervision of all

25  its officers and agents as well as the implementation and maintenance of official and unofficial

26  policies. At all times relevant to this Complaint, DEFENDANT LVMPD directly employed and

27  controlled all the individually named Defendants: Z. CHRISTON (P#17276), E. HUTCHASON

28  (P#12955), J. BONAGUIDI (P#7967) and DOES I – L ("DEFENDANT OFFICERS").

11.    DEFENDANT LVMPD is a combined CITY OF LAS VEGAS and CLARK COUNTY law enforcement agency, currently headed by SHERIFF KEVIN McMAHILL, and previously by, now GOVERNOR, JOE LOMBARDO.

12.    DEFENDANT CLARK COUNTY is a political subdivision of the State of Nevada, and a legal entity for the purposes of 42 U.S.C. § 1983. DEFENDANT CLARK COUNTY ("DEFENDANT COUNTY") is responsible for the enforcement of the law and the protection of the citizenry of the City of Las Vegas and Clark County, Nevada. DEFENDANT COUNTY is also responsible for the training, hiring, control and supervision of all its officers and agents as well as the implementation and maintenance of official and unofficial policies. At all times relevant to this Complaint, DEFENDANT COUNTY employed and controlled all the DEFENDANT OFFICERS.

13.    The DEFENDANT CITY OF LAS VEGAS is a political subdivision of the State of Nevada, and a legal entity for the purposes of 42 U.S.C. § 1983. DEFENDANT CITY OF LAS VEGAS ("DEFENDANT CITY") is responsible for the enforcement of the law and the protection of the citizenry of the City of Las Vegas and Clark County, Nevada. DEFENDANT CITY is also responsible for the training, hiring, control and supervision of all its officers and agents as well as the implementation and maintenance of official and unofficial policies. At all times relevant to this Complaint, DEFENDANT CITY controlled all the DEFENDANT OFFICERS.

14.    At times relevant, GOVERNOR, JOE LOMBARDO was Sheriff of DEFENDANT LVMPD and was a final policy maker.

15.    DEFENDANT Z. CHRISTON (P#17276) ("DEFENDANT OFFICER CHRISTON"), is an officer of DEFENDANT LVMPD. At all times relevant to this Complaint, DEFENDANT OFFICER CHRISTON was acting in his capacity as an agent, servant and employee of DEFENDANT LVMPD.

16.    DEFENDANT OFFICER CHRISTON is sued in both his individual and official capacities.

. . . .

17. DEFENDANT SGT. E. HUTCHASON (P#12955) ("DEFENDANT SGT. HUTCHASON"), is a K-9 officer of DEFENDANT LVMPD. At all times relevant to this Complaint, DEFENDANT SGT. HUTCHASON was acting in his capacity as an agent, servant and employee of DEFENDANT LVMPD.

18. DEFENDANT SGT. HUTCHASON is sued in both his individual and official capacities.

19. DEFENDANT SGT. J. BONAGUIDI (P#7967) ("DEFENDANT SGT. BONAGUIDI") is an officer of DEFENDANT LVMPD. At all times relevant to this Complaint, DEFENDANT SGT. BONAGUIDI was acting in his capacity as an agent, servant and employee of DEFENDANT LVMPD.

20. DEFENDANT SGT. BONAGUIDI is sued in both his individual and official capacities.

21. DEFENDANT OFFICERS used an unreasonable amount of force in relation to the threat or force posed by the late Mr. Guillory. Although the late Mr. Guillory, had surrendered himself, DEFENDANT OFFICER CHRISTON shot the late Mr. Guillory with rubber bullets and/or bean bags. Having been fired upon, the late Mr. Guillory, a decorated veteran, serving 6 years with the United States Army, including two (2) combat tours in Afghanistan, took defensive action, by retreating, and in doing so DEFENDANT SGT. HUTCHASON unnecessarily deployed his police animal, who brought down the late Mr. Guillory. The late Mr. Guillory, being in custody, incapacitated, and not resisting lawful arrest or threatening the life or safety of any DEFENDANT OFFICERS or the public, was needlessly tasered by DEFENDANT SGT. BONAGUIDI.

22. As the late Mr. Guillory lay handcuffed, on the ground, under the hundreds of pounds of combined weight of LVMPD officers, either by an LVMPD officer or by DEFENDANT COMMUNITY AMBULANCE personnel, independently or at the order and/direction of LVMPD, injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine. DEFENDANT COMMUNITY AMBULANCE personnel are hereinafter referred to as the DEFENDANT EMTS.

23.     On information and belief, DEFENDANT EMTS did not examine the late Mr. Guillory. On information and belief, DEFENDANT OFFICERS and DEFENDANT EMTS knew or should have known that the late Mr. Guillory may have been under the influence of cocaine. DEFENDANT OFFICERS and DEFENDANT EMTS also knew or should have known of that KETAMINE with cocaine can result in profound respiratory depression and death.

24.     On information and belief DEFENDANT COMMUNITY AMBULANCE is under contract with the DEFENDANT CITY and/or DEFENDANT COUNTY to provide medical and ambulance services, and DEFENDANT COMMUNITY AMBULANCE employs those certain EMTS DOES I – V, including those DEFENDANT EMTS

25.     DEFENDANT DOES VI THROUGH XXX, inclusive, are the individual members of DEFENDANT LVMPD who assisted in, participated in, facilitated, permitted or allowed the violation of the late Mr. Guillory's civil rights and/or the wrongful death of the late Mr. Guillory. Plaintiff will ask leave of this Court to insert the true names and capacities of such Defendants when the same have been ascertained and will further ask leave to join said Defendants in these proceedings.

26.     Defendant Does XXXI through L, inclusive, are supervisory and/or policy making officials of DEFENDANT LVMPD, DEFENDANT CITY, and/or DEFENDANT COUNTY as yet unidentified who have adopted, implemented, maintained or tolerated policies which permitted, facilitated or allowed the violation of the late Mr. Guillory's civil rights and/or the wrongful death of the late Mr. Guillory, or who have negligently trained, hired or supervised officers, agents or employees of DEFENDANT LVMPD. Plaintiff will ask leave of this Court to insert the true names and capacities of such Defendants when the same have been ascertained and will further ask leave to join said Defendants in these proceedings.

27.     At all times relevant to this Complaint, all of the actions of the Defendants were performed under color of state law and pursuant to their authority as police officers.

. . . .

. . . .

. . . .

## FACTS

28.    The late Mr. Guillory was an American and his life mattered. On December 5, 2021, the late Mr. Guillory was 37 years old.

29.    The late Mr. Guillory was a decorated veteran of the United States Army, serving six (6) years, including two (2) combat tours in Afghanistan. After being an honorable discharged, Mr. Guillory became and was a resident of Las Vegas, Nevada.

30.    Prior to December 5, 2021, the late Mr. Guillory, from time to time, acted out on "demons" because of the things that he did during his time in the military for his country, which needed him to do at that time. The late Mr. Guillory had service related disability rating of 80%.

31.    PLAINTIFF GUILLORY also served in the U.S. military for 22 years, and worked for the Grand Perry, Texas police department, and is and for all time relevant herein, retired.

32.    Prior to December 5, 2021, the late Mr. Guillory was physically fit. Prior to December 5, 2021, the late Mr. Guillory had no known history of cardiovascular issues. Prior to December 5, 2021, the late Mr. Guillory had no known respiratory issues.

33.    At all times relevant herein, PLAINTIFF GUILLORY the owner of a unit at 2405 W. Serene Ave., a secure, gated, residential complex. For the previous nine (9) months prior to December 5, 2021, the late Mr. Guillory resided with his mother PLAINTIFF GUILLORY.

34.    At all times relevant herein, PLAINTIFF GUILLORY owned a 2019 White Jeep Cherokee, and the late Mr. Guillory owned a 2014 White Jeep Cherokee.

35.    On December 5, 2021, the late Mr. Guillory being lawfully on and within the gated premises of 2405 W. Serene Ave., was having a transient incident with his demons. As a result, the late Mr. Guillory found himself in a vehicle and, on information and belief, with a defensive object.

36.   On information and belief, the late Mr. Guillory, was known to security personnel, but HOA management and security company changed, resulting in the late Mr. Guillory being reported as a suspicious, black male attempting to enter vehicles.

37.   As a result of said report, several units from DEFENDANT LVMPD were dispatched. The units surrounded and blocked the vehicle, in which the Mr. Guillory occupied. On information and belief, additional units were dispatched and/or arrived at the scene, creating a second perimeter, blocking any and all escape routes. Subsequently, a unit from DEFENDANT COMMUNITY AMBULANCE was dispatched to the scene, as well.

38.   On December 5, 2021, the late Mr. Guillory being gone for a time, PLAINTIFF GUILLORY left her residence to look for her son, the late Mr. Guillory. PLAINTIFF GUILLORY soon learned that her son, the late Mr. Guillory, PLAINTIFF GUILLORY soon learned that her son, the late Mr. Guillory, was the subject of all the visible commotion resulting from the numerous police units at the scene.

39.   PLAINTIFF GUILLORY presented herself to the DEFENDANT OFFICER in charge (Caucasian male, approx. age 30 years), identified herself as the late Mr. Guillory's mother.  PLAINTIFF GUILLORY informed DEFENDANT OFFICER in charge of the Mr. Guillory's health condition and offered assistance to defuse the situation.

40.   DEFENDANT OFFICER in charge declined and refused PLAINTIFF GUILLORY's assistance.

41.   PLAINTIFF GUILLORY witnessed the following events.

42.   Upon being surrounded by police, the late Mr. Guillory likely, initially, like struck the front window of the vehicle out of frustration, and later became intimidated by the numerous police units and commands of a DEFENDANT OFFICER, who as with other DEFENDANT OFFICERS had their guns and shot guns withdrawn and pointing at him, a black male.

43.    At the time on December 5, 2021, on information and belief, DEFENDANT OFFICER did not know whether the late Mr. Guillory had any active warrants,

44.    At that time on December 5, 2021, on information and belief, DEFENDANT OFFICERS did not have information to believe that the late Mr. Guillory had committed any crime.

45.    Eventually, the late Mr. Guillory did exit the vehicle, surrendering himself. In the process of explaining that he lived there and of complying with DEFENDANT OFFICERS demands, DEFENDANT OFFICER CHRISTON (Caucasian male, approx. age 30 years) suddenly and without prior notice, shot the late Mr. Guillory with rubber bullets and/or bean bags.

46.    As an army combat veteran, the late Mr. Guillory, not knowing with what he had been shot, defensively retreated to a safer area. In doing so, despite the secondary perimeter cutting off any escape route, DEFENDANT SGT. HUTCHASON (Caucasian male, approx. age 30 years) unnecessarily deployed his police animal, who brought down the late Mr. Guillory, with numerous, viscous, skin tearing, and painful bites to his body

47.    The late Mr. Guillory, being in custody, incapacitated, and not resisting lawful arrest or threatening the life or safety of any DEFENDANT OFFICERS or the public, was needlessly tasered by DEFENDANT SGT. BONAGUIDI (Caucasian male, approx. age 30 years).

48.    Writhing in pain, suffering from confusion from the breadth and extent of violence perpetuated upon him by the DEFENDANT OFFICERS, the late Mr. Guillory, likely under the influence of flashbacks to the violence of the service for his country, tried to avoid further suffering.

49.   DEFENDANT OFFICERS responded, to the late Mr. Guillory's aversion to the unnecessary, excruciating pain and suffering he was enduring, by several DEFENDANT OFFICERS ganging up on the late Mr. Guillory, keeping him down, and cuffing him.

50.   At this point in time, DEFENDANT OFFICERS used an unreasonable amount of force in relation to the threat or force posed by the late Mr. Guillory, who had surrendered himself, was in custody, was incapacitated, and not resisting lawful arrest or threatening the life or safety of any police office or the public.

51.   At this point in time, none of the DEFENDANT OFFICERS ever had a reasonable fear of imminent bodily harm, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from the late Mr. Guillory.

52.   At this point in time, the late Mr. Guillory was not experiencing, and did not appear to be experiencing, any medical condition that would be treated with Ketamine, a powerful sedative that frequently causes devastating side effects.

53.   Notwithstanding, as the late Mr. Guillory lay handcuffed, on the ground, under the hundreds of pounds of combined weight of several DEFENDANT OFFICERS, either by a DEFENDANT OFFICER or by DEFENDANT EMTS, independently or at the order and/direction of DEFENDANT LVMPD, injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine.

54.   Minutes after the injection, DEFENDANT EMTS noticed that the late Mr. Guillory's Glasgow Coma Scale had dropped as low as a three (3). The extended, needless use of excessive force and torture by DEFENDANT OFFICERS and the subsequent injection of a massive Ketamine overdose by DEFENDANT EMTS overwhelmed the late Mr. Guillory's body and he could not recover.

55.   At no relevant time was the late Mr. Guillory in a mental or physical condition that prevented him from being able to indicate his consent or lack of consent.

56.   The late Mr. Guillory, never fully regained consciousness. He could not overcome the massive damage to his body caused by the unmitigated acidosis from the excessive force inflicted on him, combined with and exacerbated by the respiratory depression from the Ketamine.

57.   Michael John Guillory was pronounced dead on December 6, 2021, in police custody, after several hours being intubated.

58.   Prior to his death, the late Mr. Guillory was caused to be injured, experiencing extreme and severe pain and physical and emotional suffering before his death, and sustained damages of a personal and pecuniary nature, and had he lived, he would have been entitled to bring this action and said action has survived him.

59.   The late Mr. Guillory committed no crime, yet, like many interactions between Black people and Clark County and the City of Las Vegas, his life ended in tragedy. In a spam of fifteen minutes, DEFENDANTS subjected the late Mr. Guillory to a procession of needless and brutal force techniques and unnecessarily and recklessly administered medication, the combined effects of which he could not survive.

60.   There was obviously no medical emergency that justified the administration of any Ketamine to the late Mr. Guillory, much less the profoundly impactful dosage DEFENDANTS caused to be forcibly administered to him.

61.   More specifically, the Ketamine dosage foreseeably suppressed the late Mr. Guillory's ability to adequately ventilate. In conjunction with the severe metabolic acidosis, use of force, the Ketamine foreseeably caused Mr. Guillory's cardiac arrest.

## LAS VEGAS METRO POLICE DEPARTMENT
## UNCONSTITUTIONAL PRACTICES AND CUSTOMS.

62.    DEFENDANT LVMPD's Use of Force Review Board has found 97% of more than 500 officer shootings and use of force incidents since 1991 justified.

63.    In 2011, the Las Vegas Review-Journal published a 5-part investigation into DEFENDANT LVMPD called "Deadly Force: When Las Vegas Police Shoot, and Kill," which found that DEFENDANT LVMPD uses deadly force "at a higher rate than many other urban police agencies," and that DEFENDANT LVMPD ranked third out of 16 police departments in both the rate of shootings per capita and in shootings per reported violent crime.

64.    The 2011 Collaborative Review also identified that a lack of command and control and the coordination of officers can result in tragic outcomes and mistakes, and that this is exacerbated by too many officers being on scene.

65.    DEFENDANT LVMPD classifies empty hand/takedown techniques, Tasers, lateral vascular· neck restraints, K-9's, the "less-lethal shotgun," and a 40 mm specialty impact weapon as non-deadly use of force.

66.    On or prior to December 5, 2021, DEFENDANT LVMPD, DEFENDANT COUNTY and DEFENDANT CITY, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, fostered or ratified a number of customs, patterns, or practices that condoned and required officers to treat members of the Black Community of Las Vegas differently, including but not limited to implementing deadly and non-deadly force at a higher rate against Black men who did not pose a threat to officers.

. . . .

. . . .

. . . .

## FIRST CAUSE OF ACTION
## FOURTH AMENDMENT EXCESSIVE FORCE

67.    DEFENDANT OFFICERS acted under color of law when the late Mr. Guillory, had surrendered himself, DEFENDANT OFFICER CHRISTON shot the late Mr. Guillory with rubber bullets and/or bean bags; having been fired upon, the late Mr. Guillory, a decorated veteran, serving 6 years with the United States Army, including two (2) combat tours in Afghanistan, took defensive action, by retreating, and in doing so DEFENDANT SGT. HUTCHASON unnecessarily deployed his police animal, who brought down the late Mr. Guillory; the late Mr. Guillory, being in custody, incapacitated, and not resisting lawful arrest or threatening the life or safety of any DEFENDANT OFFICERS or the public, was needlessly tasered by DEFENDANT SGT. BONAGUIDI; as the late Mr. Guillory lay handcuffed, on the ground, under the hundreds of pounds of combined weight of LVMPD officers, either by an LVMPD officer or by DEFENDANT COMMUNITY AMBULANCE personnel, independently or at the order and/direction of LVMPD, injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine; and all.as more particularly set forth above.

68.    In so doing they deprived the late Mr. Guillory of his constitutional rights under the fourth amendment of the constitution to be free from the use of excessive force.

69.    The use of such force was not objectively reasonable under the circumstances.

70.    The attack and beating was the proximate cause of the damages complained of herein.

## SECOND CAUSE OF ACTION
## BATTERY (STATE LAW)

71.    DEFENDANT OFFICERS battered the late Mr. Guillory when late Mr. Guillory, had surrendered himself, DEFENDANT OFFICER CHRISTON shot the late Mr. Guillory with rubber bullets and/or bean bags; having been fired upon, the late Mr. Guillory, a decorated veteran, serving 6 years with the United States Army, including two (2) combat tours in Afghanistan, took defensive action, by retreating, and in doing so DEFENDANT SGT. HUTCHASON unnecessarily deployed his police animal, who brought down the late Mr. Guillory; the late Mr. Guillory, being in custody, incapacitated, and not resisting lawful arrest or

threatening the life or safety of any DEFENDANT OFFICERS or the public, was needlessly tasered by DEFENDANT SGT. BONAGUIDI; as the late Mr. Guillory lay handcuffed, on the ground, under the hundreds of pounds of combined weight of LVMPD officers, either by an LVMPD officer or by DEFENDANT COMMUNITY AMBULANCE personnel, independently or at the order and/direction of LVMPD, injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine; and all.as more particularly set forth above.

72. The conduct of DEFENDANT OFFICERS was unreasonable, willful, malicious and without legal justification or privilege.

**THIRD CAUSE OF ACTION**
**FOURTH AMENDMENT UNLAWFUL SEIZURE**

73. DEFENDANT OFFICERS, acting under color of law, willfully and intentionally violated the late Mr. Guillory's right to be free from unreasonable seizure under the 4th amendment of the Constitution by the intentional and unreasonable seizure of the late Mr. Guillory as more particularly set forth in the preceding paragraphs.

74. DEFENDANT EMTS, if either by an LVMPD officer or by DEFENDANT EMTS, independently or at the order and/direction of LVMPD, injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine, resulted in the unlawful seizure of the late Mr. Guillory.

75. That the seizure was the proximate cause of the damages set forth herein.

**FOURTH CAUSE OF ACTION**
**FALSE IMPRISONMENT (State Law)**

76. As more particularly set forth above, DEFENDANT OFFICERS unreasonably restrained the late Mr. Guillory of his liberty without cause or justification

77. The conduct of DEFENDANT OFFICERS was unreasonable under the circumstances.

. . . .

. . . .

78.   DEFENDANT OFFICERS were acting in bad faith in imprisoning the late Mr. Guillory as they were motivated by an inflated sense of power and angry because the late Mr. Guillory did not show them the respect they believed they were due.

79.   In addition, DEFENDANT OFFICERS were aware that the secondary perimeter blocked any possible escape by the late Mr. Guillory but unreasonably, for the purpose of assuaging their own egos and determined to punish the late Mr. Guillory when he had surrendered himself, DEFENDANT OFFICER CHRISTON shot the late Mr. Guillory with rubber bullets and/or bean bags; having been fired upon, the late Mr. Guillory, a decorated veteran, serving 6 years with the United States Army, including two (2) combat tours in Afghanistan, took defensive action, by retreating, and in doing so DEFENDANT SGT. HUTCHASON unnecessarily deployed his police animal, who brought down the late Mr. Guillory; the late Mr. Guillory, being in custody, incapacitated, and not resisting lawful arrest or threatening the life or safety of any DEFENDANT OFFICERS or the public, was needlessly tasered by DEFENDANT SGT. BONAGUIDI; as the late Mr. Guillory lay handcuffed, on the ground, under the hundreds of pounds of combined weight of LVMPD officers, either by an LVMPD officer or by DEFENDANT COMMUNITY AMBULANCE personnel, independently or at the order and/direction of LVMPD, injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine; and all.as more particularly set forth above.

**FIFTH CAUSE OF ACTION**
**§ 1983 14th AMENDMENT DUE PROCESS RIGHT**
**TO MEDICAL CARE AND TREATMENT**

80.   DEFENDANT OFFICERS were aware of the altered mental state of the late Mr. Guillory, they knew or should have known that Mr. Guillory may have been under the influence of cocaine, and also knew or should have known that KETAMINE with cocaine can result in profound respiratory depression and death

81.   On information and belief, DEFENDANT EMTS did not examine the late Mr. Guillory. On information and belief, DEFENDANT EMTS knew or should have known that the

late Mr. Guillory may have been under the influence of cocaine and also knew or should have known that KETAMINE with cocaine can result in profound respiratory depression and death.

82.   At least from the time DEFENDANT OFFICERS searched and found cocaine on the late Mr. Guillory, DEFENDANT OFFICERS and DEFENDANT EMTS were aware of the altered mental state of the late Mr. Guillory, that Mr. Guillory may have been under the influence of cocaine; and that KETAMINE with cocaine can result in profound respiratory depression and death.

83.   While DEFENDANT OFFICERS and DEFENDANT EMTS knew the late Mr. Guillory faced a substantial risk of serious medical harm, they deprived him of the proper medical care, when either by an LVMPD officer or by DEFENDANT EMTS, independently or at the order and/direction of LVMPD, injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine; and all.as more particularly set forth above.

84.   The acts of these DEFENDANTS in preventing the late Mr. Guillory from obtaining proper medical treatment proximately caused the damages set forth herein.

85.   The acts of these DEFENDANTS were malicious, oppressive and done with a conscious disregard of plaintiff's rights.

86.   DEFENDANT LVMPD, DEFENDANT COUNTY and DEFENDANT CITY developed policies that denied proper medical care to individuals in the custody of DEFENDANT OFFICERS and DEFENDANT LVMPD, particularly where the medical conditions had a mental component.

87.   In making these policies, these DEFENDANTS were acting under color of state law.

88.   That in making these policies, these DEFENDANTS deprived the late Mr. Guillory of his Federal Constitutional Rights as set forth in the First, Third, Fourth and Fifth Causes of Action above.

89.   That as a proximate cause of the deprivation of rights set forth herein, the late Mr. Guillory suffered the injuries and damages set forth herein.

90.   The conduct of these DEFENDANTS was willful, malicious and oppressive in that they knew there was a substantial likelihood a substantial number of persons would sufferer serious injury or death as a consequence of those policies.

91.   By virtue of the foregoing, DEFENDANT OFFICERS, DEFENDANT LVMPD, DEFENDANT COUNTY, and DEFENDANT CITY are liable to PLAINTIFFS for the injuries and damages complained of herein.

## SIXTH CAUSE OF ACTION
### WRONGFUL DEATH (STATE CLAIM)

92.   PLAINTIFFS, upon information and belief, allege that DEFENDANTS, and each of them, are responsible by their intentional actions for the occurrences and injuries alleged herein.

93.   Upon information and belief, DEFENDANT OFFICERS used excessive force and intentionally, wantonly, willfully, maliciously, oppressively, and without just provocation or cause proximately brought about the death of the late Mr. Guillory and the injuries sustained by Plaintiffs by an LVMPD officer or by DEFENDANT EMTS, independently or at the order and/direction of LVMPD, injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine and killing the late Mr. Guillory.

94.   DEFENDANTS, and each of them, ratified the conduct of DEFENDANT OFFICERS and DEFENDANT EMTS, who failed to secure proper medical attention to the late MR. Guillory and then intentionally injected the late Mr. Guillory, without his permission, with a massive dose of Ketamine, even though they knew that KETAMINE with cocaine can result in profound respiratory depression and death

95.   That the wrong and unlawful acts perpetrated by the DEFENDANTS, and each of them, intentionally disregarding the rights of the Plaintiff and the late Mr. Guillory were willful,

oppressive, malicious and with wanton disregard for the established rights of the Plaintiffs and the late Mr. Guillory.

96.    As a direct and proximate result of DEFENDANTS' conduct as herein alleged, PLAINTIFFS have been damaged in the amounts complained of herein.

## SEVENTH CAUSE OF ACTION
## NEGLIGENCE (STATE CLAIM)

97.    At all times mentioned herein, DEFENDANTS were subject to a duty of care to avoid causing unnecessary physical harm and distress to citizens in the exercise of the police function. The conduct of DEFENDANTS as set forth here did not comply with the standard of care to be exercised by reasonable police officers, thus, DEFENDANTS, and each of them, breached their duty of care.

98.    As a direct and proximate result of the DEFENDANTS' negligence as herein alleged, PLAINTIFFS have been damaged in the amounts complained of herein.

.

## EIGHTH CAUSE OF ACTION
## § 1983 RATIFICATION BY FINAL POLICY MAKERS OF
## DEFENDANT LVMPD, DEFENDANT COUNTY AND DEFENDANT CITY

99.    In addition to the allegations set forth above, DEFENDANT LVMPD, DEFENDANT COUNTY AND DEFENDANT CITY knew of and specifically approved the acts and omissions of DEFENDANT EMTS in connection with this matter which constitute the violations of law set forth in this complaint.

100.    In addition to the allegations set forth above, DEFENDANT LVMPD, DEFENDANT COUNTY AND DEFENDANT CITY knew of and specifically approved the acts and omissions of DEFENDANT OFFICERS complained of which constitute the violations of law set forth in this complaint.

. . . .

101.  The acts and omissions complained of herein are the proximate cause of the damages complained of.

102.  Accordingly DEFENDANT LVMPD, DEFENDANT COUNTY AND DEFENDANT CITY are legally responsible for the damages complained of herein.

**NINTH CAUSE OF ACTION**
**§ 1983 CLAIM AGAINST DEFENDANT LVMPD, DEFENDANT COUNTY AND DEFENDANT CITY BASED ON OFFICIAL POLICY, PRACTICE, OR CUSTOM**

103.  As set forth above, DEFENDANT OFFICERS and DEFENDANT EMTS deprived the Late Mr. Guillory of his constitutional rights.

104.  They did so pursuant to an expressly adopted official policy or a longstanding practice or custom of DEFENDANT LVMPD, DEFENDANT COUNTY and DEFENDANT CITY to deprive persons in custody of proper medical treatment, particularly where those conditions primary manifestation is mental aberration and/or under the influence of cocaine.

105.  The late Mr. Guillory suffered from being under the influence of cocaine and that administering KETAMINE with cocaine can result in profound respiratory depression and death was known to DEFENDANTS but DEFENDANTS acted in accord with the policy, practice and custom and denied the late Mr. Guillory of proper medical care.

106.  The denial of proper medical care was the proximate cause of the injuries and damages complained of herein.

**TENTH CAUSE OF ACTION**
**§ 1983 CLAIM AGAINST DEFENDANT LVMPD, DEFENDANT COUNTY AND DEFENDANT CITY BASED ON POLICY OF FAILURE TO TRAIN**

107.  DEFENDANT OFFICERS AND DEFENDANT EMTS deprived the late Mr. Guillory of his particular rights under the Constitution of the United States of America as more particularly set forth above.

108.  To the extent the allegations in this cause of action are inconsistent with prior allegations they are pled in the alternative as allowed by FRCP 8(d)(2).

109.  DEFENDANTS were acting under color of state law when they acted as complained of above.

110.  The training policies of DEFENDANT LVMPD, DEFENDANT COUNTY and DEFENDANT CITY were not adequate to train DEFENDANT OFFICERS and DEFENDANT, EMTS to handle the usual and recurring situations with which they must deal.

111.  DEFENDANT LVMPD, DEFENDANT COUNTY and DEFENDANT CITY were deliberately indifferent to the obvious consequences of their failure to train DEFENDANT OFFICERS AND DEFENDANT EMTS adequately.

112.  The failure of training by DEFENDANTS NORTH LAS VEGAS AND LAS VEGAS is so closely related to the deprivation of the rights of THE LATE MR. GUILLORY by DEFENDANT OFFICERS, EMTS AND JAILERS as to be the moving force causing the damages and injuries complained of.

**ELEVENTH CAUSE OF ACTION**
**NEGLIGENT TRAINING AND SUPERVISING LVMPD (STATE CLAIM)**

113.  DEFENDANT LVMPD was required to use reasonable care in training and supervising its employees, DEFENDANT OFFICERS.

114.  As part of the training, DEFENDANT LVMPD was required to train officers in recognizing and dealing with symptoms and signs of mental abnormalities, the use of force on persons evincing such abnormalities, the use of force proportional to the facts and circumstances of the situation, the circumstances under which a medical evaluation is required.

115.  DEFENDANT LVMPD had a duty to evaluate use of force and officer interaction with people evincing mental abnormalities, to use such incidents as learning incidents, and to take appropriate disciplinary action where improper conduct was observed. DEFENDANT LVMPD breached its duty to train and supervise by failing to evaluate and adequately train DEFENDANT OFFICERS in such matters.

116.  This breach of the duty to train and supervise proximately caused the injuries and damages complained of herein.

**TWELFTH CAUSE OF ACTION**
**NEGLIGENT TRAINING AND SUPERVISING COUNTY (STATE CLAIM)**

117.  DEFENDANT COUNTY was required to use reasonable care in training and supervising its employees, DEFENDANT OFFICERS.

118.  As part of the training, DEFENDANT COUNTY was required to train officers in recognizing and dealing with symptoms and signs of mental abnormalities, the use of force on persons evincing such abnormalities, the use of force proportional to the facts and circumstances of the situation, the circumstances under which a medical evaluation is required.

119.  DEFENDANT COUNTY had a duty to evaluate use of force and officer interaction with people evincing mental abnormalities, to use such incidents as learning incidents, and to take appropriate disciplinary action where improper conduct was observed. DEFENDANT COUNTY breached its duty to train and supervise by failing to evaluate and adequately train DEFENDANT OFFICERS in such matters.

120.  This breach of the duty to train and supervise proximately caused the injuries and damages complained of herein.

**THIRTEENTH CAUSE OF ACTION**
**NEGLIGENT TRAINING AND SUPERVISING CITY (STATE CLAIM)**

121.  DEFENDANT CITY was required to use reasonable care in training and supervising its employees, DEFENDANT OFFICERS.

122.  As part of the training, DEFENDANT CITY was required to train its officers in recognizing and dealing with symptoms and signs of mental and physical abnormalities and the circumstances under which a medical evaluation is required.

123.  DEFENDANT CITY had a duty to evaluate use of force and officer interaction with people evincing mental abnormalities, to use such incidents as leaning incidents, and to take appropriate disciplinary action where improper conduct was observed.

124.  DEFENDANT CITY breached its duty to train and supervise by failing to evaluate and adequately train and supervise DEFENDANT EMTS in such matters.

125.  This breach of the duty to train and supervise proximately caused the injuries and damages complained of herein.

### FOURTEENTH CAUSE OF ACTION
### § 1983 DESTRUCTION OF FAMILY INTEGRITY AND LOSS OF CONSORTIUM

126.  The conduct of DEFENDANTS described herein so shocks the conscience and offends the community's sense of fair play and decency so as to entitle PLAINTIFF JUDITH D. GUILLORY to her damages for the destruction of her family integrity and her loss of consortium.

### FIFTEENTH CAUSE OF ACTION
### LOSS OF CONSORTIUM (STATE LAW)

127.  DEFENDANTS' CONDUCT as set forth above entitle PLAINTIFF JUDITH D. GUILLORY to damages for loss of consortium.

### ATTORNEY'S FEES

128.  Plaintiffs have been required to retain the services of Dan Winder, Esq., of the law offices of Dan Winder, P.C., to prosecute this action and should be awarded their reasonable costs, expenses and attorney's fees incurred herein pursuant to 42 U.S.C. § 1983 and § 1988 and all relevant Nevada Revised Statutes regarding the state claims.

### DAMAGES

129.  The acts complained of above are so closely related to the deprivation of PLAINTIFFS' rights as to be the moving force that caused the injures and damages complained of below.

130.  The actions complained of above are the proximate and legal cause of the injury and damages set forth below.

. . . .

131.   Upon information and belief, the late Mr. Guillory's medical condition was either caused or exacerbated by DEFENDANT OFFICERS, as complained of above and the failure of or conduct of DEFENDANT EMTS to provide proper medical treatment as complained of above, and DEFENDANT LVMPD, DEFENDANT COUNTY, and DEFENDANT CITY, as complained of above. Based upon the subsequent medical records and observation of the video tapes of the arrest of the late Mr. Guillory, the late Mr. Guillory's heart stopped beating as a proximate result of DEFENDANTS' conduct as complained of above.

132.   As a consequence of the foregoing, PLAINTIFFS have and will continue to suffer damages as follows:

      a. Loss of enjoyment of life,

      b. Mental, physical, and emotional pain and suffering,

      c. The reasonable value of necessary medical care, treatment, and services, including but not limited to hospital expense incurred to date,

133.   As a consequence of the foregoing PLAINTIFF JUDITH D. GUILLORY, individually has suffered a loss of family integrity and consortium.

134.   PLAINTIFF JUDITH D. GUILLORY is entitled to damages for her loss of consortium and family integrity because the conduct of DEFENDANTS shocks the conscience.

## **PRAYER FOR RELIEF**

A.    PLAINTIFF JUDITH D. GUILLORY as ADMINISTRATRIX OF THE ESTATE OF MICHAEL JOHN GUILLORY hereby seeks damages on behalf of her ward as follows:

    1.   For his future loss of income and past and future medical expenses,

    2.   For his past and future mental, physical, and emotional pain and suffering,

    3.   For punitive damages, and

    4.   For attorney fees and costs of suit

All in amounts to be proven at trial.

. . . .

. . . .

   B.     PLAINTIFF JUDITH D. GUILLORY, in her individual capacity, seeks damages

for her Loss of Consortium and Family Integrity in amounts to be proven at trial.

   DATED this 5th day of December, 2024.

                              LAW OFFICE OF DAN M. WINDER PC

                              /s/ Dan Winder
                              DAN M. WINDER, ESQ.
                              Nevada Bar No. 001569
                              ARNOLD WEINSTOCK, ESQ.
                              Nevada Bar No. 000810
                              3507 W. Charleston Blvd.
                              Las Vegas, Nevada  89102
                              Tele: (702) 878-6000
                              Fax: (702) 474-0631
                              E-Mail: winderdanatty@aol.com
                              Attorney for *Plaintiffs*